Cox v. Camp.

---

## Ann Barns Cox *v.* Robert C. Camp.

Defendant claimed to be the owner of a slave under a notarial act of sale, executed to him on the 26th of March. Plaintiff, cited in warranty as the representative of the alleged vendor, offered in evidence a letter from the defendant to the latter, dated in that month, the day not mentioned, in which, after stating that he has not title to a sufficient number of negroes to obtain a loan which he desired, he requests the alleged vendor "*to send him an act of sale for the slave*" sued for "*for the present.*" *Held,* that this was a counter-letter, showing that there was no sale as between the parties.

Appeal from the District Court of Iberville, *Deblieux*, J.

*McHenry*, for the plaintiff and warrantor.

*Labauve*, for the appellant.

Bullard, J. The plaintiff sues for a slave named Miles,

which she claims as her separate property; and the defendant sets up title under an act of sale from her late husband, Nathaniel Cox, whose estate the plaintiff administers; and she is, in that capacity, called in warranty. It is clearly shown, that the slave belongs to the plaintiff, and that she has never consented to his alienation; and the only question which the case presents is, whether there was a real sale by Cox to the defendant, so as to render his estate liable in warranty. The plaintiff had a verdict and judgment, and the defendant has appealed.

The defendant gave in evidence a copy of an act passed before Christy, a notary, purporting to be a sale of the slave Miles, signed by Cox alone, for $700, cash; and it appears, that a copy of the act was forwarded to the defendant in Iberville, where his plantation is situated, and where the negro was at the time. In order to show that this act was simulated, that in truth there was no sale, and no price paid, the plaintiff gave in evidence a letter from the defendant to Nathaniel Cox, dated March, 1835, (on the 26th day of which month the act was passed,) in which he informs him of the progress of his negotiations with the bank for a loan of money on mortgage, and that his business was all agreed to, with the exception of the negroes, and adds: "As I have not title for all the negroes offered to insure a sufficient amount, and as Abraham is not here, I wish you would *send me an act of sale for Miles* for the present, &c. If you wish it, I will release him from the mortgage as soon as I can arrange the title of some I have."

This is clearly a counter-letter, and shows that, as between the parties, there was no sale, but that their intention was, that Camp should have a nominal title so as to *enable him* to mortgage the slave temporarily to the bank.

But it is contended, that certain expressions in letters written by Cox, to the defendant, show that his intention was to make a *bona fide* sale. In the first, in which he mentions having forwarded a copy of the act of sale of Miles, he says: " This sale for Miles may be considered permanent, as I surely shall never take him into the house again." The other letter bears date before the act of sale, and merely announced that Cox, had sent a box containing Miles' clothes, who, it would seem, had been sent up

previously, and who, he says, "is never more to see New Orleans, as my property. Therefore consider him as destined for the plantation all his life."

Admitting that it may have been the intention of Cox, to sell Miles, and never to take him back into his house, yet there is no evidence that Camp so understood it at that time, much léss, that he ever paid or engaged to pay the price set forth in the act of sale. It appears that Cox died in 1836, and that the defendant was largely indebted to him at that time. The parties had had many business transactions together, and it does not appear that the defendant was ever charged with the price of Miles. Nothing shows that the two parties concurred as to the price of the slave, or that a sale, which was manifestly simulated at first, became a serious one afterwards, by mutual consent.

*Judgment affirmed.*